IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NITTANY NOVA AGGREGATES, LLC, | : | Case No. 4:16-CV-00120 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| WM CAPITAL PARTNERS, LLC and | : | |
| WM CAPITAL PARTNERS, XXXIX, LLC,: | | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

October 26, 2016

Before the Court for disposition is Defendants WM Capital Partners, LLC and WM Capital Partners, XXXIX, LLC's ("Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, this Motion to Dismiss will be granted in part and denied in part.

**I.    BACKGROUND[1]**

On January 22, 2016, Plaintiff Nittany Nova Aggregates, LLC ("Plaintiff"), a Pennsylvania limited liability company in the aggregate business, filed a Complaint against Defendants WM Capital Partners, LLC and WM Capital Partners, XXXIX, LLC asserting the following claims: (1) conspiracy, (2)

---

[1] For purposes of this Motion to Dismiss, the allegations presented in Plaintiffs' Amended Complaint will be taken as true, and all inferences will be construed in the light most favorable to Plaintiffs.

1

fraudulent misrepresentation/inducement, (3) negligent misrepresentation/inducement, (4) breach of contract, and (5) unjust enrichment.[2]

The events giving rise to this Complaint stem from Plaintiff's supply of products to Defendants and its assistance with the restructuring of their business as a stone-cutting facility doing business as Shadow Mountain Stone. In accordance with an oral contract with Defendants, Plaintiff specifically alleges providing the following assistance. First, because Defendants had not established credit with local vendors and suppliers, Plaintiff made payments on their behalf.[3] Defendant, in turn, promised to compensate Plaintiff for these payments.[4] In total, Plaintiff asserts that it advanced funds for material and employment services on Defendants' behalf in the sum of $ 87,293.40.[5] Defendants have since repaid only $ 79,709.40 dollars, leaving a balance of $ 7,584.00.[6]

Second, as part of its contractual obligations, Plaintiff also sold equipment on Defendants' behalf which Defendants had obtained as part of their business asset acquisition from B & S Quarries.[7] Defendants, in return, promised to invest the proceeds from this sale in the business to ensure proper capitalization.[8]

---

[2] ECF No. 1.
[3] Compl. ¶ 11-12, at 3.
[4] Id. ¶ 13, at 4.
[5] Id. ¶ 14, at 4.
[6] Id.
[7] Id. ¶ 15, at 4.
[8] Compl. ¶ 16, at 4.

Third and finally, Plaintiff also assisted in the restructuring of Defendants' business as a stone-cutting facility by supplying various types of rock beginning in February 2015.[9]  From February 2015 through September 2015, Plaintiff supplied Defendants with $ 954,895.69 worth of stone and materials.[10]  Defendants paid for said materials through August 2015 in the sum of $ 583,078.51.[11]  There remains, however, an unpaid balance of $ 371,817.18 owed to Plaintiff for products delivered and received by Defendants' employees.[12]  Plaintiff has since made numerous demands for payment from Defendants.[13]

In sum then, this is a breach of contract case predicated on this Court's diversity jurisdiction and brought under Pennsylvania law.[14]  On May 3, 2016, Defendants filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).[15]  Defendants specifically seeks the dismissal of: (1) counts I through III under the state law "gist of the action doctrine" and/or "economic loss doctrine;" (2) count IV (breach of contract) for failure to state a claim upon which relief can be granted; and (3) Plaintiff's requests for attorney's fees made throughout its

---

[9] Id. ¶ 17, at 5.
[10] Id. ¶ 19, at 5.
[11] Id. ¶ 20, at 5.
[12] Id. ¶¶ 21–22, at 5–6.
[13] Compl. ¶ 22, at 6.
[14] Id. ¶ 1, at 1.  28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States").
[15] ECF No. 4.

Complaint.[16] This Motion has since been briefed by both parties and is thus ripe for disposition.[17]

## II. DISCUSSION
### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[18] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[19] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[20]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[21] In two landmark decisions, Bell Atlantic Corporation v. Twombly and Ashcroft v. Iqbal, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[16] Defs.' Mot. to Dismiss for Failure to State A Claim (ECF No. 4).
[17] ECF Nos. 6 & 12.
[18] In re Hydrogen Peroxide Litigation, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).
[19] Neitzke, 490 U.S. at 326 (citing Hishon v. King & Spalding, 467 U. S. 69, 73 (1984)).
[20] Neitzke, 490 U.S. at 327.
[21] Howard M. Wasserman, The Roberts Court and the Civil Procedure Revival, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[22] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in Conley v. Gibson and replaced it with a more exacting "plausibility" standard.[23]

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[24] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[26] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[27]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[28] No matter the context, however, "[w]here a complaint pleads facts that are 'merely

---

[22] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, supra at 319–20.
[23] Iqbal, 556 U.S. at 670 (citing Conley v. Gibson, 355 U.S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").
[24] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).
[25] Iqbal, 556 U.S. at 678.
[26] Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).
[27] Twombly, 550 U.S. at 556.
[28] Iqbal, 556 U.S. at 679.

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[29]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[30]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[31]  "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[32]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[33]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[34]

---

[29] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).
[30] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[31] Iqbal, 556 U.S. at 678 (internal citations omitted).
[32] Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).
[33] Iqbal, 556 U.S. at 678.
[34] Connelly, 809 F.3d at 787 (internal quotations and citations omitted).

**B. Analysis**

Based on a review of the factual allegations of the Complaint read in conformity with the Twombly-Iqbal standard of pleading, I find that Plaintiff has alleged facts which make "plausible on its face" its breach of contract claim. Defendants' Motion to Dismiss with regard to that claim will therefore be denied.

Plaintiff's conspiracy, fraudulent misrepresentation, and negligent misrepresentation claims, however, seemingly attempt to re-cast injuries stemming from contractual obligations as recoverable in tort.  Because the "gist of the action" doctrine bars such an attempt by plaintiffs, these claims will be dismissed under Federal Rule of Civil Procedure 12(b)(6).  Finally, Defendants' Motion to Dismiss will also be granted with respect to the Complaint's requests for attorney's fees as Plaintiff has failed to establish an exception to the American rule concerning attorney's fees.  These conclusions are reached based on the reasoning expounded below.

    1. Defendants' Motion to Dismiss Will Be Denied With Respect to Plaintiff's Breach of Contract Claim.

The Court will begin its analysis by determining the sufficiency of Plaintiff's breach of contract claim.  Under Pennsylvania law, a party asserting a claim for breach of contract must allege the following three elements: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract;

and (3) resultant damages.[35]  A plaintiff need not allege every detail of the contract within its complaint; however, each of the aforementioned elements must be specifically pleaded.[36]  The need for such clarity in a complaint is "particularly important where an oral contract is alleged."[37]

In the matter at hand, Plaintiff has alleged a plausible breach of contract claim.  Specifically, when read in the light most favorable to Plaintiff and with an assumption of veracity, I find the following factual averments make plausible, under Twombly-Iqbal, Plaintiff's breach of contract claim:

> 12. Plaintiff knowingly and intentionally per its oral contract with Plaintiff, made requests of the Plaintiff for payments to vendors and suppliers on its behalf with the representations that Defendants would reimburse Plaintiff for said expenses plus an administration fee.
>
> 13. Further, per the oral contract between the Defendants and Plaintiff, Defendant promised and represented to Plaintiff that Defendants would compensate Plaintiff for its services.
>
> 14. In total, Plaintiff advanced funds on behalf of the Defendants in the amount of Eighty Seven Thousand Two Hundred Ninety-Three and 40/100 ($87,293.40) for materials and employment services for which it was only reimbursed Seventy Nine Thousand Seven Hundred Nine and 40/100 Dollars ($79,709.40).
>
> 15. As part of its contractual obligations per the request of the Defendants, Plaintiff sold equipment which Defendants had obtained as part of their acquisition of the business assets of B&S Quarries.

---

[35] Carlisle Medical Group, LLC v. Salah Eldohiri, M.D., Civil No. 1:15-CV-2367, 2016 WL 2736061 at *2 (M.D.Pa. May 11, 2016) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).
[36] Byrne v. Cleveland Clinic, 84 F.Supp.2d 641, 658 n. 20 (E.D.Pa. 2010) (citing Cutillo, 723 A.2d at 1058).
[37] Pa. Supply, Inc. v. Am. Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. Ct. 2006)

> 16. Defendants represented to Plaintiff that the proceeds of the sale of the equipment would be re-invested into the business to ensure that the business was properly capitalized.[38]

Considered together, these averments represent factual content from which I can draw a reasonable inference that Defendants are liable for the misconduct alleged. Specifically, Plaintiff has sufficiently alleged, with supporting facts, (1) the existence of a contract, (2) the breach of that contract, and (3) resultant damages. Because of this conformity with the plausibility pleading standard, further discovery of facts tending to support the contract's formation, its breach, and any resultant damages is warranted. Defendant's Motion to Dismiss will therefore be denied as to this claim.

> 2. <u>Defendants' Motion to Dismiss Will Be Granted With Respect to Plaintiff's Fraudulent Misrepresentation, Negligent Misrepresentation, and Conspiracy Claims.</u>

Plaintiff next seeks dismissal of counts I through III based on either the "gist of the action doctrine" and/or the "economic loss doctrine."

Both the "gist of the action" doctrine and the economic loss doctrine are devices used by courts to maintain the conceptual distinction between tort and breach of contract claims.[39] The "gist of the action" doctrine prevents "plaintiffs

---

[38] Compl. ¶¶ 12–16, at 3–4.
[39] <u>Pediatrix Screening, Inc. v. TeleChem Intern., Inc.</u>, 602 F.3d at 548 (applying the "gist of the action" doctrine); <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 671 (3d Cir. 2002) (applying economic loss doctrine) (interior citations omitted).

from re-casting ordinary breach of contract claims into tort claims," while the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."[40] At first blush, the doctrines may seem almost interchangeable. They are, however, distinct based upon the origins of their respective development.[41] The economic loss doctrine evolved within the specific context of products liability cases.[42] The United States Court of Appeals for the Third Circuit has therefore noted that the gist of the action doctrine is a "better fit" for application to non-products liability cases.[43]

Because Plaintiff's complaint does not allege a products liability claim, the Court will determine the plausibility of Plaintiff's tort claims under the "gist of the action" doctrine. The gist of the action doctrine precludes tort claims where the true gravamen, or gist, of the claim sounds in contract."[44] The critical conceptual distinction between a breach of contract claim and a tort claim is therefore based upon whether the breach which occurred arose from mutual agreements between particular individuals (contract), or based on law as a matter of social policy

---

[40] Graham Packaging Company, L.P. v. Transplace Texas, L.P., Civil No. 1:15-CV-01186, 2015 WL 8012970 at *2 (M.D.Pa. Dec. 7, 2015) (Kane, J.) (quoting Pediatrix, 602 F.3d at 548 and Werwinski, 286 F.3d at 671).
[41] Id.
[42] See Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 n.11 (3d Cir. 2001) (stating that the economic loss doctrine developed to preclude products liability tort claims in cases where only the product itself was injured); see also Pediatrix, 602 F.3d at 544 n. 5 (finding that the "gist of the action doctrine" is a "better fit" for non-products liability tort claims).
[43] Id.
[44] Dommel Properties LLC v. Jonestown Bank and Trust Co., 626 F.App'x. 361, 364 (3d Cir. 2015) (citing Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014)).

10

(tort).[45] In Bruno v. Erie Insurance Company, the Supreme Court of Pennsylvania reaffirmed this "duty-based demarcation" under the "gist of the action" doctrine, and stated that "the nature of the duty alleged to have been breached" is "the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract."[46] The Bruno Court further explained that "if the facts of a particular claim establish that the duty breached is one created . . . by the terms of their contract," then the claim sounds in contract.[47] If, however, the claim involves a broader social duty which "exists regardless of the contract," then a tort claim exists.[48]

Plaintiff has alleged, in addition to its breach of contract and unjust enrichment claims, tort claims of (1) conspiracy, (2) fraudulent misrepresentation/inducement, and (3) negligent misrepresentation/inducement. The nature of the duties alleged to have been breached, and thus whether the "gist of the action" doctrine dictates dismissal of these claims, will be examined below.

(a) Fraudulent Misrepresentation/Inducement

Within its Complaint, Plaintiff brings a claim for fraudulent

---

[45] Graham Packaging Company, L.P., 2015 WL 8012970 at *3 (citing Reardon v. Allegheny Coll., 926 A.2d 477, 486–87 (Pa. Super. Ct. 2007) and Jones v. ABN Amro Mortg. Grp., Inc., 606 F.3d 119, 123 (3d Cir. 2010)).
[46] Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014); see also Downs v. Andrews, 639 F.App'x. 816, 819 (3d Cir. 2016) (recognizing that the Bruno Court had reiterated the duty-based inquiry required under the "gist of the action" doctrine to determine what the case is "really about.").
[47] Bruno, 106 A.3d at 63.
[48] Id.

misrepresentation/inducement. Plaintiff bases this claim on (1) Defendants' false representations that they were adequately capitalized for the operation of the stone cutting business, and (2) Defendants' false representations that proceeds from the sale of equipment acquired in the purchase of assets from B&G Quarries were being reinvested in the operations of the business.[49] Because the Court finds that such allegations do not allege a general social duty independent of contractual obligations, Plaintiff's fraudulent misrepresentation must be dismissed under the "gist of the action" doctrine.

In Bruno v. Bozzuto's, Inc.,[50] the Honorable Robert D. Mariani of this Court applied the "gist of the action" doctrine and dismissed a plaintiff's fraudulent misrepresentation claim.[51] In a clear application of then Pennsylvania case law concerning the "gist of the action" doctrine, he found that dismissal was appropriate because "[p]laintiffs' tort counts ar[o]se solely from contractual duties," and not from "an independent duty that would give rise to such an action."[52] Judge Mariani also discounted Plaintiff's argument that an independent social duty stemming from a special or confidential relationship was created

---

[49] Compl. ¶¶ 32–33, at 8–9.
[50] While the Court recognizes that Bruno v. Bozzuto's Inc. was decided prior to the Pennsylvania Supreme Court's decision in Bruno v. Erie Ins. Co., the Court finds Judge Mariani's reasoning followed closely the duty-based demarcation already established and thus is highly informative and persuasive.
[51] Bruno v. Bozzuto's Inc., 850 F.Supp.2d 462, 468 (M.D.Pa. 2012) (Mariani, J.).
[52] Id.

simply by virtue of arms-length business contract.[53]  This failure therefore to allege a duty independent from those within the contract represented plaintiff's attempt to "have it both ways on the same statement of facts."[54]

In the case at bar, Plaintiff similarly attempts, either by plan or through imprecise pleading, to have it both ways.  Because this Complaint alleged an oral contract, the Court read it in the light most favorable and with all inferences drawn in favor of the Plaintiff.  In so doing, the Court found a plausible breach of contract claim based on Plaintiff's promise to pay vendors and sell equipment on Plaintiff's behalf and Defendants' reciprocal promises to compensate Plaintiff for such expenditures and capitalize their company from the sales.  Plaintiff seemingly attempts to make plausible its fraudulent misrepresentation claim based on a breach of these same exact obligations.[55]  This attempt, however, does not obscure the need for a similar result as in Bruno v. Bozzuto's, Inc., i.e. Plaintiff has failed to adduce statements indicating a general social duty independent of those created by contract.[56]  Defendants' Motion to Dismiss will therefore be granted as to Plaintiff's fraudulent misrepresentation/inducement claim.

---

[53] Id. at 469 (citing eToll, Inc. v. Elias/Savion Adv., Inc., 811 A.2d 10, 23 (Pa. Super. Ct. 2002) ("If parties to routine arms-length commercial contracts ... were held to have a 'special relationship,' virtually every breach of such a contract would support a tort claim.")).
[54] Id.
[55] See Compl. ¶¶ ¶¶ 32–33, at 8–9.
[56] See also Downs, 639 F.App'x. at 820 (declining to determine whether fraud in the inducement claims are categorically barred by the "gist of the action" doctrine where the requested relief in

(b) <u>Negligent Misrepresentation/Inducement</u>

In Count III of its Complaint, Plaintiff alleges a negligent misrepresentation claim against Defendants based on factual allegations identical to both its fraudulent misrepresentation/inducement and breach of contract claims. As discussed above, the failure to allege a breach of a general social duty independent of contractual obligations is fatal to Plaintiff's tort claims. Therefore, as with the fraudulent misrepresentation/inducement claim, the Court finds that the "gist of the action" doctrine applies and the tort claim of negligent misrepresentation/inducement will be dismissed.[57]

(c) <u>Conspiracy</u>

In the first count of its Complaint, Plaintiff alleges a civil conspiracy claim against Defendants. A claim for civil conspiracy "requires that two or more people conspire to do an unlawful act."[58] A civil conspiracy claim also requires an underlying tort.[59] Because this final requirement concerning the presence of an underlying tort makes critical the success of Plaintiff's fraudulent

---

the instant action was based on "a failure to deliver[] in accordance with the contract, not a separate societal duty").

[57] <u>Bruno v. Bozzuto's Inc.</u>, 850 F.Supp.2d at 469 (dismissing a negligent misrepresentation claim for failure to allege independent facts or duties beyond those supporting the breach of contract claim).

[58] <u>McGreevy v. Stroup</u>, 413 F.3d 359, 371 (3d Cir. 2005); <u>Goldstein v. Phillip Morris, Inc.</u>, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (finding that in a claim for civil conspiracy, a plaintiff must establish that "two or more persons act[ed] with a common purpose to do an unlawful act or to do a lawful act by unlawful means ...").

[59] <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 405 (3d Cir. 2000).

misrepresentation and negligent misrepresentation claims, their dismissal under the "gist of the action" doctrine is determinative of the conspiracy claim. Plaintiff's civil conspiracy claim must therefore also be dismissed.[60]

### 3. Defendants' Motion to Dismiss Will Be Granted With Respect to Plaintiff's Request for Attorney's Fees.

Defendants also ask the Court to dismiss Plaintiff's requests for the imposition of attorney's fees. The Commonwealth of Pennsylvania follows what is known as the "American Rule" which directs that each party to litigation is responsible for his or her own attorney's fees absent bad or vexatious conduct, an express statutory authorization, a clear agreement of the parties, or some other established exception.[61] Here, because the Court has dismissed Plaintiff's tort claims, breach of contract and unjust enrichment are the only claims under which Plaintiff can recover attorney's fees. In contract actions, fees are unavailable absent an express agreement between the parties.[62] Plaintiff has failed to allege facts which indicate a fee shifting arrangement within the apparent oral contract. Furthermore, to the extent the Plaintiff includes language sounding in punitive damages as a mode of recovering attorney's fees,[63] the Court notes that such

---

[60] Downs v. Andrews, No. 13-CV-5788, 2014 WL 7235841 at *9 (E.D.Pa. Dec. 19, 2014) (dismissing a conspiracy claim for failure to allege an underlying tort).
[61] Lucchino v. Commonwealth, 809 A.2d 264, 267 (Pa. 2002).
[62] Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan, 817 F.Supp.2d 515, 534 (E.D.Pa. 2011).
[63] Compl. ¶ 42, at 10.

damages are not recoverable under breach of contract or unjust enrichment.[64] Thus, Plaintiff's requests for attorney's fees will be dismissed.

### 4. Plaintiff Will Be Granted Twenty-One Days To Amend Its Complaint.

Although Plaintiff's tort claims have been dismissed for failure to state a claim, the Court is aware that other district courts within the Third Circuit have advised caution when dismissing tort claims under the "gist of the action" doctrine at this early stage of litigation.[65] Because the Court's inability to find a general social duty sounding in tort may be the result of imprecise pleading, leave will be granted under Federal Rule of Civil Procedure 15(a) to file an amended complaint (re-asserting the dismissed tort claims) within twenty-one (21) days of this Order.[66] With the benefit of a more comprehensive pleading which chronologically details the business relationship and interactions between the parties, the Court will be better equipped to recognize a general social duty which would exist regardless of the oral contract.

---

[64] Rittenhouse Regency Affiliates v. Passen, 482 A.2d 1042, 1043 (Pa. Super. Ct. 1984); Williamsburg Commons Condominium Ass'n v. State Farm Fire and Cas. Co., 907 F.Supp.2d 673, 680 n. 7 (E.D.Pa. 2012).
[65] See, e.g., Am. Auto Ins. Co. v. L.H. Reed & Sons, Inc., No. 3:14-CV-1911, 2015 WL 1566224 at *3 (M.D.Pa. Apr. 8, 2015) (Munley, J.) (citing, inter alia, Caudill Seed & Warehouse Co. v. Prophet 21 Inc., 123 F.Supp.2d 826, 834 (E.D.Pa. 2000); Interwave Tech., Inc. v. Rockwell Automation, Inc., No. 05–398, 2005 WL 3605272 at *13 (E.D.Pa. Dec. 30, 2005); and Weber Display & Packaging v. Providence Wash. Ins. Co., No. 02–7792, 2003 WL 239141, at *3–4 (E.D. Pa. Feb. 10, 2003)).
[66] Fed.R.Civ.P. 15(a)(2)("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.").

### III. CONCLUSION

Based on the above reasoning and analysis, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion is granted with respect to the tort claims of conspiracy (count I), fraudulent misrepresentation/inducement (count II), and negligent misrepresentation (count III). Defendant's Motion is similarly granted with respect to Plaintiff's request for attorney's fees. Defendant's Motion is denied concerning Plaintiff's breach of contract claim.

Plaintiff is, however, given leave under Fed.R.Civ.P. 15(a) to correct the deficiencies of its dismissed tort claims by filing an Amended Complaint within twenty–one (21) days.

An appropriate Order follows.

BY THE COURT:

  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge