**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NITTANY NOVA AGGREGATES, LLC, | : | Case No. 4:16-CV-00120 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| WM CAPITAL PARTNERS, LLC and | : | |
| WM CAPITAL PARTNERS, XXXIX, LLC,: | | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**February 27, 2017**

Before the Court for disposition are the following Motions: (1) Plaintiff Nittany Nova Aggregates, LLC's ("Plaintiff") Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, (2) Defendants WM Capital Partners, LLC and WM Capital Partners, XXXIX, LLC's ("Defendants") Motion for Involuntary Dismissal of Plaintiff's Amended Complaint, and (3) Plaintiff's Cross Motion for Leave to Amend Complaint *Nunc Pro Tunc*.  For the reasons that follow, Plaintiff's Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, and Defendants' Motion for Involuntary Dismissal of Plaintiff's Amended Complaint will be denied.  Plaintiff's Cross Motion for Leave to Amend Complaint *Nunc Pro Tunc* will be granted.

## I.    BACKGROUND[1]

The events giving rise to this dispute stem from Plaintiff's supply of products to a stone-cutting facility known as Shadow Mountain Stone and its assistance with the restructuring of a stone-cutting facility located in New Milford, Pennaylvania.

Defendant WM Capital Partners, XXXIX, LLC ("WM 39") is a Delaware limited liability company[2] which was formed in February 2013 for the purpose of purchasing certain loans of M&T Bank.[3]  WM 39 subsequently purchased the business and real estate formerly associated with B & S Quarries.[4]  This real estate included 4 contiguous parcels totaling 766.35 acres in Susquehanna County.[5]  Also included within the purchase were various assets such as quarries, a saw shop, equipment, and other buildings.[6]  WM 39 planned to establish a saw shop and a quarry on this acquired real estate.  To further the operation of both the saw shop

---

[1]  The findings of fact contained within this Memorandum Opinion are drawn from Plaintiff's Amended Complaint (ECF No. 20), the parties' supplement filings in support of the instant motions, and the transcript of a preliminary injunction hearing held on January 5, 2017.

[2]  Certificate of Formation (ECF No. 49-1, Exhibit A).

[3]  Def.'s Supp. Br. (ECF No. 49) at 3.

[4]  Am. Compl. (ECF No. 20) ¶ 8, at 2; Def.'s Supp. Br. at 3.

[5]  WM 39 Susquehann County Property Deed, Preliminary Injunction Hearing Defendants' Exhibit 3.

[6]  Def.'s Supp. Br. at 3.

and quarry, WM 39 formed two operating entities: (1) WM Quarries ("WMQ") for the quarries,[7] and (2) Shadow Mountain Stone ("SMS") for the saw shop.[8]

Richard Young, principal of Plaintiff Nittany Nova Aggregates, LLC, was also hired as a consultant to track down the assets of B&S Quarries and marshal them for the operation of the saw shop.[9]  He later worked for a monthly stipend during the short-lived operation of the saw shop.[10]

Plaintiff Nittany Nova Aggregates, LLC is in the aggregate stone business and supplied products, services, materials and equipment to the re-established stone cutting facility in New Milford, Pennsylvania.[11]  Plaintiff specifically alleges providing the following assistance.  First, because Defendants had not established credit with local vendors and suppliers, Plaintiff made payments on their behalf pursuant to Defendants' oral request.[12]  Defendants, in turn, promised to compensate Plaintiff for these payments.[13]  In total, Plaintiff asserts that it

---

[7]  Certificate of Formation (ECF No. 49-1, Exhibit B).

[8]  Def.'s Supp. Br. at 3.

[9]  Pl.'s Supp. Memorandum of Law (ECF No. 51), at 2.

[10]  Preliminary Injunction Hearing Transcript (ECF No. 48), at 31:15-16.

[11]  Am. Compl. ¶ 6, at 2.

[12]  Am. Compl. ¶ 9, at 2.

[13]  Id. ¶ 10, at 3.

advanced funds[14] for material and employment services on Defendants' behalf in the sum of $ 87,293.40.[15]  Defendants have since repaid $ 79,709.40 dollars, leaving a balance of $ 7,584.00.[16]

Second, as part of its contractual obligations, Plaintiff also sold equipment on Defendants' behalf which Defendants had obtained as part of their business asset acquisition from B & S Quarries.[17]  Defendants, in return, promised to invest the proceeds from this sale in the business to ensure proper capitalization.[18]

Third and finally, Plaintiff also assisted in the restructuring of the New Milford property as a stone-cutting facility by supplying it with various types of rock.[19]  From February 2015 through September 2015, Plaintiff supplied Defendants with $ 954,895.69 worth of stone and materials.[20]  Defendants paid for these materials[21] through August 2015 in the sum of $ 583,078.51.[22]  There

---

[14]  Plaintiff attached invoices to its Amended Complaint memorializing these advancements at ECF No. 20-1, Exhibit A.

[15]  Am. Compl. ¶ 11, at 3.

[16]  Id. ¶ 12, at 3.

[17]  Id. ¶ 14, at 3.

[18]  Id. ¶ 15, at 3.

[19]  Id. ¶ 16, at 3.

[20]  Am. Compl. ¶ 18, at 3.

[21]  Attached to Plaintiff's Amended Complaint are invoices for the materials supplied. ECF No. 20-1, Exhibit B.

remains, however, an unpaid balance of $ 371,817.18 owed to Plaintiff for products delivered and received by Defendants' employees.[23]

This action was commenced by Complaint on January 22, 2016.[24] Defendants thereafter filed a Motion to Dismiss said Complaint on May 3, 2016.[25] The Court partially granted this Motion on October 26, 2016, and, in so doing, gave Plaintiff twenty-one days from that date in which to file an Amended Complaint re-asserting dismissed tort claims.[26]  Plaintiff thereafter filed an Amended Complaint on November 30, 2016,[27] and the currently pending Emergency Motion for Temporary Restraining Order and for Preliminary Injunction on December 8, 2016.[28]

Plaintiff's request for the imposition of a preliminary injunction stems from an online auction held on December 13, 2016 which Plaintiff avers depleted all of Defendants' remaining assets.[29]  The Court held numerous telephonic conferences

---

[22] Id. ¶ 20, at 3.

[23] Id.

[24] ECF No. 1.

[25] ECF No. 4.

[26] ECF Nos. 18 & 19.

[27] ECF No. 20.

[28] ECF No. 21.

[29] ECF No. 21-5.

thereafter,[30] in which the parties agreed that proceeds from the auction would be held in the escrow account of Defendants' attorney pending the disposition of the motion for preliminary injunction.[31]  On January 5, 2017, the Court held a hearing on the pending motion for a preliminary injunction.[32]  In accord with a Court directive, the parties subsequently filed briefs on supplemental issues on January 20, 2017.[33]  These matters are now ripe for disposition.

## II.    DISCUSSION

The Motions before the Court address two distinct issues.  The first issue concerns the propriety of the November 20, 2016 Amended Complaint and is addressed in both Defendants' Motion for Involuntary Dismissal of Plaintiff's Amended Complaint and Plaintiff's Cross Motion for Leave to Amend Complaint *Nunc Pro Tunc.*  The second issue pertains to the appropriateness of injunctive relief concerning the auction proceeds and is addressed by Plaintiff's Emergency Motion for Temporary Restraining Order and for Preliminary Injunction.  Because a merits determination under the preliminary injunction standard necessarily depends on the averments contained within a complaint, logic dictates that I first

---

[30]  ECF Nos. 27 and 28.

[31]  ECF No. 29.

[32]  ECF No. 48.

[33]  ECF Nos. 49 & 51.

address the propriety of the November 20, 2016 Amended Complaint.  My

disposition therefore is as follows.

### A. Defendants' Motion for Involuntary Dismissal of Plaintiff's Amended Complaint/Plaintiff's Cross Motion for Leave to Amend Complaint *Nunc Pro Tunc*

#### i. Law

Federal Rule of Civil Procedure 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or
> a court order, a defendant may move to dismiss the action or
> any claim against it.  Unless the dismissal order states
> otherwise, a dismissal under this subdivision (b) . . . operates as
> an adjudication on the merits.[34]

The United States Court of Appeals for the Third Circuit has articulated six factors

for a court to consider when pondering dismissal under Rule 41(b):

(1)     the extent of the party's personal responsibility;

(2)     the prejudice to the adversary caused by the failure to meet

        scheduling orders and respond to discovery;

(3)     a history of dilatoriness;

(4)     whether the conduct of the party or the attorney was willful or

        in bad faith;

(5)     the effectiveness of sanctions other than dismissal, which

        entails an analysis of alternative sanctions; and

---

[34] Fed. R. Civ. P. 41(b).

(6)     the meritoriousness of the claim or defense.[35]

"In balancing these factors, there is no 'magic formula,' nor must they all be satisfied."[36]  "[N]o single *Poulis* factor is dispositive."[37]  Finally, when considering the imposition of this extreme sanction, courts should resolve all doubts "in favor of reaching a decision on the merits."[38]

### ii.    Analysis

Having considered the above <u>Poulis</u> factors as they relate to Plaintiff's failure to timely file its Amended Complaint, I find that dismissal of this action for failure to comply with my October 26, 2016 Order is not warranted

(1) The Extent of the Party's Personal Responsibility

In my October 26, 2016 Order addressing Defendants' original Motion to Dismiss, I granted Plaintiff "leave to file an Amended Complaint within twenty-one (21) days of the date of this Order re-asserting the dismissed tort claims."[39] Plaintiff thereafter filed an Amended Complaint thirty-five days later, on November 30, 2016.  Rather than re-assert with a greater factual basis the

---

[35]  <u>Poulis v. State Farm Fire and Casualty Co.</u>, 747 F.2d 863, 868 (3d Cir. 1984).

[36]  <u>Parks v. Ingersoll-Rand Co.</u>, 380 Fed. App'x 190, 194 (3d Cir. 2010).

[37]  <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir. 2003).

[38]  <u>Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 878 (3d Cir. 1994)(quoting <u>Scarborough v. Eubanks</u>, 747 F.2d 871, 878 (3d Cir. 1984)).

[39]  <u>See</u> ECF No. 19.

8

dismissed tort claims, this Amended Complain instead more logically relayed the factual background of the case and added a claim of *quantum meruit*.[40]  It was, therefore, in violation of my Court order which made explicit that amendment was to occur within twenty-one days and was limited to allow Plaintiff to re-assert dismissed tort claims.

Despite this clear non-compliance and Defendants' arguments concerning this factor, I find that Plaintiff cannot be held *personally* responsible for this error. The myriad of cases finding that this factor weighs in favor of this dismissal involve *pro se* plaintiffs whose failures are undoubtedly their own.[41]  Here, Plaintiff is represented by counsel.  Therefore, although "a client cannot always avoid the consequences of the acts or omissions of its counsel,"[42] I find that this error cannot be attributed to Plaintiff because it was procedural in nature and beyond the knowledge of the lay man.  This factor therefore weighs against dismissal.

## (2) The Prejudice to the Adversary

---

[40]  See ECF No. 20.

[41]  See, e.g., Torres v. Gautsch, 304 F.R.D. 189, 191 (M.D.Pa. 2015)(finding that, because plaintiffs are proceeding *pro se*, their failure to comply with Court orders therefore cannot be blamed on counsel).

[42]  Poulis, 747 F.2d at 868.

In ruling on a Motion for Involuntary Dismissal pursuant to Federal Rule of Civil Procedure 41(b), "[e]vidence of prejudice to an adversary 'would bear substantial weight in support of a dismissal or default judgment.' "[43]  Such prejudice may be inflicted through "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."[44]

In the instant matter, Defendants can point to no real prejudice suffered by the admittedly untimely filing of Plaintiff's Amended Complaint.  Specifically, because my Opinion of October 26, 2016 only partially dismissed Plaintiff's Complaint,[45] this matter was set to advance into discovery regardless of whether an Amended Complaint was filed.  Furthermore, although Defendants argue that they would have answered with affirmative defenses had Plaintiff not filed the untimely Amended Complaint, I note that the unique procedural history of this case and the recently held preliminary injunction hearing have nevertheless allowed them to assert defenses to this action in a meaningful manner.  Therefore, because Defendants cannot establish prejudice resulting from this very limited delay, I find that this factor also weighs against dismissal.

---

[43] Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873–74 (3d Cir. 1994)(quoting Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984)).

[44] Id.

[45] See ECF No. 18.

### (3) A History of Dilatoriness

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders."[46]  In analyzing whether this condition is met, the Third Circuit has stipulated that "a party's problematic acts must be evaluated in light of its behavior over the life of the case."[47]  As such, "conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness."[48]

Taken as whole, Plaintiff's conduct does not demonstrate a history of dilatoriness.  First, the untimely filing of the Amended Complaint is Plaintiff's first incident of untimeliness in response to a court order.  Defendants argue that Plaintiff (1) had previously improperly tried to serve the complaint and summons by way of certified mail, and (2) had improperly engaged in discovery in violation of Federal Rule of Civil Procedure 26.[49]  However, I note that both of these allegations occurred prior to the entry of appearance of Plaintiff's current counsel

---

[46] Adams, 29 F.3d at 874.

[47] Id. at 875.

[48] Briscoe v. Klaus, 538 F.3d 252, 261 (3d Cir. 2008).

[49] Def.'s Br. in Supp. of Mot. for Involuntary Dismissal of Pl.'s Compl. (Def.'s Br.) (ECF No. 25), at 6.

and have not really delayed the instant proceedings.[50]  Furthermore, even if I were

to credit these instances, I still find that they are, without more, insufficient to

demonstrate a history of dilatory conduct in a matter which has thus far required

extensive legal work to counter.

### (4) Willful or Bad Faith Conduct

To determine whether a party acted in bad faith, the court looks for "flagrant

bad faith," or "intentional or self-serving behavior" going beyond mere

negligence.[51]  Here, based on the explanation provided by Plaintiff concerning its

non-compliance, I cannot find that Plaintiff's conduct rose beyond negligence to

the level of "flagrant bad faith."  Specifically, while Plaintiff's explanation for its

ultimately filing was ultimately erroneous, I cannot find that it demonstrates a level

justifying dismissal.[52]  This factor therefore weighs against granting Defendants'

Motion.

### (5) The Effectiveness of Alternative Sanctions

---

[50]  ECF No. 17.

[51]  See Pavalone v. Cnty. of Lackawanna Pa, Civil Action No. 1:11-CV-1449, at *2 (M.D.Pa. Oct. 31, 2011)(Conner, C.J.) (citing Adams, 29 F.3d at 875; Emerson v. Thiel College, 296 F.3d 184, 191 (3d Cir. 2002)).

[52]  Plaintiff argues within its brief in opposition to Defendants' Motion for Involuntary Dismissal that its untimely filing was made to trigger Defendants' response. See Pl.'s Memo of Law in Opp. to Defs.' Mot. for Involuntary Dismissal (ECF No. 30), at 2.  This argument is in error, however, as Defendants' Answer would only be due twenty-one days after the allotment of time for Plaintiff to file an Amended Complaint expired, or on or before December 7, 2016.

Prior to involuntarily dismissing an action, a court must also consider the availability of alternative sanctions.  In so directing, the Third Circuit has stated that a preferable alternative to dismissal "would be to impose the excess costs caused by such conduct directly upon the attorney, with an order that such costs are not to be passed on to the client."[53]  Such sanctions, authorized by Federal Rule of Civil Procedure 37(b), "avoid compelling an innocent party to bear the brunt of its counsel's dereliction."[54]  Here, I find that, because the error rests upon Plaintiff's counsel, an alternative sanction to dismissal undoubtedly exists through the imposition of "expenses, including attorneys' fees, caused by unjustified failure to comply" with the Order.[55]

### (6) The Meritoriousness of the Claim or Defense

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."[56]  Courts specifically consider the meritoriousness of a claim under the same standard as a motion to dismiss made pursuant to

---

[53] Poulis, 747 F.2d at 869.

[54] Id.

[55] Id.

[56] Id. at 869–70.

Federal Rule of Civil Procedure 12(b)(6).[57]   In this action, Plaintiff alleges claims

of (1) breach of contract, and (2) unjust enrichment/*quantum meruit*.  In the

Court's previous Memorandum of October 26, 2016 addressing Defendants'

Motion to Dismiss, the Court found that both of these claims met the plausibility

requirements of *Twombly-Iqbal*.[58]  Furthermore, the meritoriousness of Plaintiff's

claims in accordance with this standard was further confirmed during the

preliminary injunction hearing recently held on this matter.  This factor therefore

weighs against dismissal.

### (7) Balancing of Factors/Leave to Amend *Nunc Pro Tunc*

After consideration of the above Poulis factors as they relate to Plaintiff's

case, I find that dismissal of this matter pursuant to Federal Rule of Civil

Procedure 41(b) is not justified.  My conclusion is in keeping with the Third

Circuit's directive that, in deciding whether to levy the extreme sanction suggested,

courts should resolve all doubts in "favor of reaching a decision on the merits."[59]

Specifically, I find that, given both the above consideration and the revealed

complexity of this case, ultimate adjudication on the merits is in the interest of

justice.

---

[57] Elbaum v. Thomas Jefferson Univ. Hosps., Inc., Civil Action No. 13-CV-1538, 2014 WL 4309004, at *5 (E.D.Pa. Sept. 2, 2014).

[58] See generally ECF No. 18.

[59] Adams, 29 F.3d at 878 (quoting Scarborough, 747 F.2d at 878).

Furthermore, in response to Defendants' Motion for Involuntary Dismissal, Plaintiff cross filed for *nunc pro tunc* leave to amend its complaint, i.e. to have the Court accept its untimely filed Amended Complaint. Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending a pleading prior to trial. Section 15(a)(1) applies to amendments as a matter of course. Amendment as a matter of course is inapplicable here. Section 15(a)(2), entitled "Other Amendments," explains that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave to amend under Rule 15(a)(2)."[60] In Shane v. Faver, for example, then Circuit Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[61] "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[62]

I find no evidence in the record indicating that Plaintiff's request is the result of undue delay, bad faith, dilatory motive, prejudice, or would otherwise be futile.

---

[60] Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008).

[61] 213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) (Alito, J.)).

[62] Coventry v. U.S. Steel Corp., 856 F.2d 514, 518 (3d Cir. 1988).

Furthermore, given the general complexity of this case, I see immense benefit in

having the parties proceed from an improved Amended Complaint which is strictly

limited to the claims progressing into discovery.  Defendants' Motion will

therefore be denied and Plaintiff's Motion granted.  Defendants are directed to file

a responsive pleading within twenty-one (21) days of the date of this Memorandum

Opinion and accompanying Order.

### B.    Plaintiff's Emergency Motion for Temporary Restraining Order And For Preliminary Injunction

#### i.    Law

Federal Rule of Civil Procedure 65 governs the granting of injunctive relief

such as temporary restraining orders and preliminary injunctions.  Such relief,

however, is extraordinary in nature and only available "upon a clear showing" of

entitlement.[63]  The United States Court of Appeals for the Third Circuit has

outlined four factors that a court ruling on a request for injunctive relief must

consider: (1) whether the movant has shown a reasonable probability of success on

the merits; (2) whether the movant will be irreparably injured by denial of the

relief; (3) whether granting preliminary relief will result in even greater harm to the

nonmoving party; and (4) whether granting the preliminary relief will be in the

---

[63] Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 197 (3d Cir. 2014)(quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)).

public interest.[64]  The moving party bears the burden of establishing each of the

four elements.[65]  As a practical matter, likelihood of success on the merits and

irreparable injury are the most important factors.[66]

### ii.    Analysis

Based on my analysis of these factors in accordance with the evidence as

developed at this early stage of litigation, I find that Plaintiff has not met its burden

of demonstrating a clear entitlement to injunctive relief.

### (1) Reasonable Probability of Success on the Merits

First, Plaintiff has not demonstrated a reasonable probability of success on

the merits of either its breach of contract claim or its unjust enrichment/*quantum*

*meruit* claim.[67]  To establish a reasonable probability of success on the merits, the

moving party must produce sufficient evidence to satisfy the essential elements of

the underlying cause of action.[68]  In determining whether success is likely, the

---

[64]  Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir. 2001).

[65]  Adams v. Freedom Forge Corp., 204 F.3d 475, 486 n. 10 (3d Cir. 2000).

[66]  See Am. Tel. & Tel. Co., 42 F.3d at 1427 & n.8.

[67]  Plaintiff alleged within its Amended Complaint two separate claims for unjust enrichment and *quantum meruit*. Both counts appear to be based on a common set of factual allegations, and as such, will be analyzed in tandem. See Powers v. Lycoming Engines, 328 F.App'x. 121, 126 (3d Cir. 2009)("Unjust enrichment, rather, an equitable remedy and synonym for *quantum meruit,* is "a form of restitution.").  See also Power Restoration Intern., Inc. v. Pepsico, Inc., Civil Action No. 12-CV-1922, 2013 WL 5636618 (E.D.Pa. Oct. 11, 2013).

[68]  See Punnett v. Carter, 621 F.2d 578, 582–83 (3d Cir. 1980); McCahon v. Pa. Tpk. Comm'n, 491 F.Supp.2d 522, 527 (M.D.Pa. 2007).

court must look to the legal principles controlling the claim and the potential defenses available to the opposing party.[69]

### A.    Breach of Contract Claim

Plaintiff first argues that it has demonstrated a reasonable probability of success on the merits of its breach of contract claim.  In order to establish a breach of contract claim, the plaintiff must demonstrate: 1) the existence of a contract; 2) a breach of a duty imposed by the contract; and 3) damages.[70]  To determine the existence of an oral contract, Pennsylvania law requires courts to assess the parties' conduct in light of the surrounding circumstances to decide whether an oral contract existed, and what terms governed.[71]  The party asserting the existence of such an oral agreement must therefore establish that its terms are "clear and precise."[72]

In the matter at hand, Plaintiff argues that, through nonpayment, Defendants breached an oral agreement between them concerning both (1) the advancement of

---

[69]  See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 264 (3d Cir. 2000).

[70]  Newlife Homecare Inc. v. Express Scripts, Inc., Civil Action No. 3:07-CV-761, 2007 WL 1314861, at 7 (M.D.Pa. May 4, 2007)(Munley, J.) (citing Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)).

[71]  Fenestra, Inc. v. John McShain, Inc., 248 A.2d 835, 836-37 (Pa. 1969); Johnston the Florist, Inc. v. TEDCO Const. Corp., 657 A.2d 511, 516 (Pa. Super. Ct. 1995).

[72]  CPG Int'l LLC v. Shelter Products, Inc., Civil Action No. 3:15-CV-1045, 2017 WL 468224, at *5 (M.D.Pa. Feb. 3, 2017)(Munley, J.)(citing Edmondson v. Zetusky, 674 A.2d 760, 764 (Pa. Commw. Ct. 1996) and Orchard v. Covelli, 590 F.Supp. 1548, 1556 (W.D.Pa. 1984)).

funds on Defendants' behalf, and (2) the later supply of saw rock for use at the

New Milford saw shop.  Concerning the agreement to make advances for vendor

payment and management services, Plaintiff specifically alleges that Defendants

orally requested these services and orally agreed to compensate Plaintiff for

them.[73]  Plaintiff further argues that, after supplying Defendants with $954,895.69

worth of materials, an unpaid balance of $371,817.18 remains.[74]  Plaintiff cites the

Declaration of Richard Young,[75] Nittany Nova invoices,[76] and the live testimony of

Richard Young as evidence of both the oral agreement reached and goods and

services provided.[77]

   Defendants, in turn, dispute the existence of an oral contract with Plaintiff

for goods and services through the following arguments.  First, Defendants argue

that Plaintiff cannot win because it sued the wrong parties.[78]  Defendants state in

support of this argument that Shadow Mountain Stone had issued all prior

payments to Plaintiff and that it is a real entity doing business and incorporated in

the State of Delaware.  Second, to the extent Defendants are proper parties, they

---

[73]  Preliminary Injunction Hearing Transcript (ECF No. 48), at 17:24-18:18; 20:5-22.

[74]  Pl.'s Memo of Law in Supp. of Preliminary Injunction (ECF No. 21-5), at 2.

[75]  ECF No. 21-2.

[76]  ECF No. 20-1.

[77]  Preliminary Injunction Hearing Transcript (ECF No. 48), at 27:8-11.

[78]  Defs.' Br. in Opp. to Pl.'s Mot. for Preliminary Inj. (ECF No. 38), at 10.

also allege a defense to underlying merits of the claims.  Specifically, Defendants

claim that, while Richard Young served as a manager of the saw shop, WM 39

learned that he was buying rock and material from his business— Plaintiff Nittany

Nova.  WM 39 believed this to be a conflict of interest and later determined that

the materials and rock provided were of a lower quality than the price charged.

Based on these allegations disputing the merit of Plaintiff's claim, Defendants

further assert within their Brief in Opposition that they plan to both countersue for

breach of fiduciary duty, conspiracy, tortious interference with contractual

obligations, fraud, and other related causes of action, and join Young as a

defendant in the action.

Whether simply by chance or through design, the relationship between the

corporate parties associated with the saw shop in question remains cloudy at best.[79]

However, regardless of which corporate entity is the proper defendant to this

action, I find that Plaintiff has nevertheless failed to demonstrate a reasonable

probability of success on the underlying merits of its breach of contract claim.

During the cross examination of Jim Barr Coleman, a contractor and lawyer

employed by WM 39 in the role of asset manager/debt collector/in-house counsel,

the following discussion occurred which called into question the existence of an

---

[79]  The parties have briefed the issue of corporate veil piercing concerning the relationship
between WMQ, SMS, and WM39.  The Court's reasoning, however, does not require that it
reach this issue, and it is thus preserved for future determination where it will be aided by
discovery.

oral agreement between Nittany Nova and any of the potential defendants (WM39,

SMS, WMQ):

> Q. Did Mr. Young ever lend his services to XXXIX in terms of his ability to provide services from Nittany Nova?
>
> A. No. When we -- when we started paying Rick a consulting fee, it was an individual, not as -- we didn't hire Nittany Nova. And it was on an independent basis. We paid Rick. We didn't pay Nittany Nova.
>
> Q. So -- you've read the amended complaint, I presume. Correct?
>
> A. Yes.
>
> Q. So when in the amended complaint it says, for example, in paragraph nine that the defendants orally requested that plaintiff, being Nittany Nova Aggregates, LLC, make payment on their behalf to vendors and suppliers, how would you respond to that?
>
> A. That's not true.
>
> Q. And why isn't it true?
>
> A. Because we were working with Rick, not Nittany Nova.
>
> Q. Did you ever have any type of proposed agreement from Mr. Young on behalf of Nittany Nova to XXXIX?
>
> A. From Rick to us, no.[80]

This testimony prevents me from finding a reasonable probability of success on the

merits of Plaintiff's breach of contract claim. Specifically, regardless of which of

the related entities was party to the agreement, that entity believed that any oral

agreement reached was with Richard Young individually, and not Nittany Nova.

---

[80] Preliminary Injunction Hearing Transcript (ECF No. 48), at 117:20-118:11. See also 54:16-24 (testimony of Richard Young).

As its most basic level, this contention creates doubt as to the formation of any agreement.[81]

Second, even if I were to find that a contract existed between Plaintiff Nittany Nova and one of the currently-named Defendants, I note that Defendants have advanced both factual disputes and defenses which preclude me from finding a clear entitlement to relief by Plaintiff.  Throughout proceedings concerning the instant motion for injunctive relief, Defendants have averred that (1) the quality of the rock delivered was out of step with its invoiced price, and (2) a conflict of interest existed with Mr. Young buying rock on behalf of WM39/WMQ/SMS from Nittany Nova.  These defenses are raised in Defendants' Brief in Opposition to Plaintiff's request for a preliminary injunction,[82] supported through the bad rock analysis performed by Defendants in July 2015,[83] and corroborated by the testimony of Jim Barr Coleman at the preliminary injunction hearing.[84]  While I

---

[81]  Cf. <u>Newlife Homecare Inc.</u>, 2007 WL 1314861, at 7 (finding a likelihood of success on the merits of a breach of contract claim where (1) existence of contract was admitted by both parties, (2) defendant does not deny that it has failed to pay in accordance therewith, and (3) plaintiff has asserted resultant damages).

[82]  Defs' Br. in Opp. to Pl.'s Mot. for Preliminary Injunction (ECF No. 38) at 10–11.

[83]  WM 39 Emails, Preliminary Injunction Hearing Defendants' Exhibit 13 (including an analysis of rock sales).

[84]      Q. Now, he -- I believe he testified that the conflict of interest issue may have only come up once, maybe twice; the second time coming up in September when you fired him. Did it come up any other time?

note that the veracity of this defense is a point of contention between the parties,[85] this defense concerning the potential low quality of the rock delivered calls into question the extent—if at all—of damages suffered by Plaintiff through non-payment.  At this early juncture, it therefore prevents me from finding a reasonable probability of success on the merits of this claim.

### B.    Unjust Enrichment/*Quantum Meruit*

I similarly cannot find a reasonable probability of success on Plaintiff's unjust enrichment/*quantum meruit* claim.  To succeed on an unjust enrichment claim, plaintiff must "show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable

---

A. Well, I raised the issue of there being a conflict of interest and how to address that at outset. And as time went on, there was -- the conflict of interest became a very big problem, which is why we're here today. And so that was an ongoing problem. I don't know that the word conflict of interest came into every conversation. But the whole issue was that Rick was buying rock for one amount of money and selling it for less. And that's a problem. And how do you address that? As the manager of Shadow Mountain Stone, how do you argue with yourself for your own company about adjusting the prices or accounting for that problem?

Q. And why do you think Mr. Young was buying product at a higher rate and selling it at a lesser rate?

A. Well, I think there's probably a couple of different reasons why that happened. You know, one is the saw shop had too much waste. It didn't utilize enough of the rock that came in. Some of it may be a lack of competence by Rick or the employees. Some of it may be attributable to a new business. A lot of it, I think, is attributable to the quality of the stone.

Preliminary Injunction Hearing Transcript (ECF No. 48), at 123:11-124:6.

[85]  Preliminary Injunction Hearing Transcript (ECF No. 48), at 27:16-29:14 (testimony of Richard Young concerning waste in the cutting process).

for the party to retain without compensating the provider."[86]   An unjust enrichment claim therefore has three elements: "[1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[87]   The doctrine of unjust enrichment is however "inapplicable when the relationship between parties is founded upon a written agreement or express contract."[88]   Thus, a theory of *quantum meruit* "**must** be pleaded alternatively in order to allow recovery under the latter theory where an express contract cannot be proven."[89]

As discussed above, Plaintiff first asserts that Defendant breached a contract by failing to pay for the materials and services it provided.   In the event this Court were to find that such a contract did not exist, however, Plaintiff also argues that it has a reasonable probability of success on the merits of its unjust enrichment claim because Defendants accepted services and materials from Plaintiff such that

---

[86]   Bair v. Purcell, 500 F.Supp.2d 468, 499 (M.D.Pa. 2007) (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987).

[87]   Colorcon, Inc. v. Lewis, 792 F.Supp.2d 786, 802 (E.D.Pa. 2011) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa.Super.Ct.1993), *aff'd* 637 A.2d 276 (1994).

[88]   Leder v. Shinfeld, 609 F.Supp.2d 386, 408 (E.D.Pa. 2009) (citing Wilson Area Sch. Dist. v. Skepton,  895 A.2d 1250, 1254 (Pa.2006)).

[89]   See Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa.Super.Ct.2009)(emphasis in original).

retention of same would be unjust without payment of value.[90]  Defendants

respond, as they did above, that such success is not probable because (1) Plaintiffs

have sued the wrong defendant, and (2) they overpaid Plaintiff for lower grade

rock.[91]

Again, even assuming that rock supplied by Plaintiff was for the benefit of

WM 39, the asserted defense questioning the quality of the rock delivered by

Plaintiff prevents me from finding a reasonable probability of success on the unjust

enrichment/*quantum meruit* claim.  Specifically, because substantial payments

have already been made for saw rock delivered, overpayment may have already

occurred if further discovery shows the rock was in fact of a lesser quality.

Advanced by Defendants in both their briefing and at the preliminary injunction

hearing, this argument will likely be memorialized in any subsequently filed

pleading.  In sum, based on the foregoing reasoning concerning both the breach of

contract and unjust enrichment/*quantum meruit* claims, I find that Plaintiff has

failed to satisfy one of the factors necessary for issuance of a preliminary

injunction—reasonable probability of success on the merits.

(2) <u>Immediate Irreparable Harm</u>

---

[90]  Pl.'s Memo of Law in Supp. of Preliminary Injunction (ECF No. 21-5), at 7.

[91]  Defs' Br. in Opp. to Pl.'s Mot. for Preliminary Injunction (ECF No. 38) at 10–11.

Even if Plaintiff were to succeed in establishing a reasonable probability of success on the merits, the Court would still be required to find that Plaintiff faces immediate irreparable harm in the absence of injunctive relief.  Irreparable injury is defined as "potential harm which cannot be redressed by a legal or equitable remedy following a trial."[92]  A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm."[93]  Injunctions are typically not appropriate in "run-of-the-mill damages actions."[94]  The Third Circuit has recognized, however, that, in certain situations, a district court has the power to protect a future damages remedy through issuance of a preliminary injunction.[95]  To obtain such relief, the plaintiff must show that (1) it is likely to become entitled to the encumbered funds upon final judgment, and (2) the plaintiff will probably be unable to recover those funds without issuance of the preliminary injunction.[96]

---

[92]  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).

[93]  Id.

[94]  Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 197 (3d Cir.1990).

[95]  Elliott v. Kiesewetter, 98 F.3d 47, 57 (3d Cir.1996) (citing Hoxworth, 903 F.2d at 197).

[96]  Hoxworth, 903 F.2d at 197

Plaintiff argues that a preliminary injunction must issue because the December 13, 2016 online auction[97] of equipment dissipated all of Defendants' remaining assets.  Defendants in turn adduce that the above standard requiring the total depletion of assets has not been met because the equipment auctioned represents only a portion of the assets from which WM 39 can satisfy a potential judgment.[98]  Having reviewed the evidence presented to resolve the instant dispute, I agree with Defendants that immediate irreparable injury has not been shown.

First, during the direct examination of Jim Barr Coleman by Defendants' counsel, WM 39 was established as owning 700 acres of land, consisting of four

---

[97]  Online Auction Notice, Preliminary Injunction Hearing Plaintiff's Exhibit 17.

[98]  Not clear prior to the preliminary injunction hearing is which entity owned the equipment being auctioned.  Ownership has since been established during the following exchange with Jim Barr Coleman and elsewhere:

> Q. Who owns the proceeds of the sale of equipment that is in the attorney trust account of the Comitz Law Firm?
>
> A. Whose money is that?
>
> Q. Um-hum.
>
> A. WM Capital Partners XXXIX.
>
> Q. XXXIX owns those proceeds?
>
> A. Yes.

Preliminary Injunction Hearing Transcript (ECF No. 48), at 92:19-25. See also 13:24-14:5 (testimony of Richard Young); 81:10-11 (testimony of Jim Barr Coleman).

parcels in Susquehanna County, Pennsylvania.[99]   Located on these parcels are numerous unencumbered appurtenances,[100] including the relevant saw shop in New Milford.[101]   Second, Defendants also aver that there are substantial natural gas reserves remaining on the property.[102]   Natural gas wells currently drilled on the property tapping this reserve generate a monthly income of between $20,000 and $30,000.[103]   Based on the existence of these assets, I find that failure to establish a constructive trust of proceeds from the online auction would not constitute immediate irreparable harm justifying the issuance of a preliminary injunction. Simply put, there is no evidence that the online auction proceeds are the only asset

---

[99]   See Preliminary Injunction Hearing Transcript (ECF No. 48), at 101:9-19.

[100]   Id. at 102:9-12.

[101]   During the preliminary injunction hearing, Plaintiff brought to light the existence of an ancillary legal proceeding in the Court of Common Pleas of Susquehanna County, Pennsylvania which Plaintiff purports demonstrates WM 39's intent to divest itself of all assets. Pl.'s Memo of Law in Supp. of Preliminary Injunction (ECF No. 21-5), at 5.  Defendants, however, aver that these court proceedings stems from their efforts to foreclose upon themselves for purposes of clearing title of existing leases. Preliminary Injunction Hearing Transcript (ECF No. 48), at 103:20-104:5.  Furthermore, examination of Jim Barr Coleman revealed that the proceedings are limited to the New Milford portion of the property, and that none of the four parcels are currently listed for sale. Id. at 104:6-8; 24-25.

[102]   Id. at 108:12-23 (discussing an real estate appraisal completed for B&S Quarries which noted the reserve assessment had a future net cash flow of 18 million and a net present value of 7 million).

[103]   See Preliminary Injunction Hearing Transcript (ECF No. 48), at 110:20-21.

from which WM39 could satisfy a judgment, or that WM39 is attempting to dissipate its assets.[104]

Because Plaintiff has failed to demonstrate both a reasonable probability of success on the merits and immediate irreparable harm, I need not consider the remaining requirements for issuance of a preliminary injunction.  As noted by the Third Circuit, the failure of the moving party to establish every element in its favor renders the grant of a preliminary injunction inappropriate.[105]  Injunctive relief in the instant matter is therefore out of reach.

## III.   CONCLUSION

Although I am at this juncture denying Plaintiff's request for preliminary injunction, I make no ultimate determination as to the ultimate merit of its suit. Rather, having become familiar with the factual background of this case, I am conscious that parties tell two rather different accounts concerning their business entanglements.   I am therefore of the view that the impending commencement of formal discovery will serve to shed light on the veracity of each story, and to ensure a just resolution of this matter.

---

[104]  See Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC, 513 F.Supp.2d 304, 320 (E.D.Pa. 2007)(finding that irreparable harm was not shown concerning a third defendant where the proposed dissipation "represents only a small portion of her net worth."); see also ACCOR Franchising North America, LLC v. HI Hotel Grp., LLC, Civil Action No. 1:11-CV-02176, 2013 WL 2949158, at *4 (M.D.Pa. June 14, 2013)(Kane, J.).

[105]  P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir.2005).

Therefore, based on the above analysis, Plaintiff's Emergency Motion for Temporary Restraining Order and for Preliminary Injunction, and Defendants' Motion for Involuntary Dismissal of Plaintiff's Amended Complaint will be denied.  Plaintiff's Cross Motion for Leave to Amend Complaint *Nunc Pro Tunc* will be granted.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge